UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAROLINE KEEBLE,

      Plaintiff,

                                    Civil Action 2:17-cv-127
    v.                          Judge Michael H. Watson
                                      Magistrate Judge Elizabeth P. Deavers

PRESIDENT DONALD J. TRUMP *et al.*,

      Defendant.

## ORDER and INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiff, Caroline Keeble, an Ohio resident who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1985 against a number of Defendants alleging a civil rights violation related to a Presidential Executive Order.  This matter is before the Court for the initial screen of Plaintiff's Complaint (ECF No. 1-2; "Complaint" or "Compl.") under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).  Having performed the initial screen, for the reasons set forth below, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims against each Defendant.

## I.

According to the Complaint ("Compl."), on January 27, 2017, President of the United States of America, Donald J. Trump, signed and issued an Executive Order (the "E.O.")

suspending visa issuance and the U.S. refugee program for seven predominantly Muslim countries and their nationals.  (Compl. ¶ 1; ECF No. 1-2.)  The E.O. states that President Trump derives authority for its issuance under 8 U.S.C. §§ 1101 and 1182.  (Compl. ¶ 4; Exs. B, C.) The E.O. proscribes that the United States Secretary of State and the United States Department of Homeland Security may jointly determine on a discretionary basis whether to admit individuals to the United States on a case by case basis, if they are a "religious minority in his country of nationality that is facing religious persecution."  (Compl. ¶¶ 5-6; Exs. D, E.)  The United States Secretary of State, Rex Tillerson, as well as the United States Secretary of Homeland Security, John Kelley, both named Defendants,[1] are alleged to have "immediately enacted" the E.O.  (Compl. ¶ 8.)  Plaintiff further alleges that, subsequent to the issuance of the E.O., "an undetermined number of Muslims, including Muslims who had already been issued visas, green card holders and Christians who had been issued visas prior to the order are detained in US airports and prevented entry."  (Compl. ¶ 9.)

Plaintiff is an American citizen born in the United States of America.  She is also a Muslim and the founder and Chairwoman of the National Association of Muslim American Women, a U.S. NGO.  (Compl. 3, ECF No. 1-2.)  Plaintiff is the ex-wife of a Muslim national who is from a predominantly Muslim country, with whom she shares a son.  The predominantly Muslim country is located in North Africa, and is not one of the seven mentioned in the E.O. (Compl. ¶ 51.)  She asserts that she is "not attempting to speak for those adversely affected by the ban, yet as a U.S. citizen she has a Constitutional interest in the Executive order and its affects on her country, its laws and customs and the behavior of elected and appointed officials. . . ."  (Compl. ¶ 50.)  Plaintiff alleges that the E.O. violates the Establishment Clause of the First

---

[1] Plaintiff also names the United States Director of National Intelligence, Michael Dempsey, and United States Acting Assistant Attorney General Curtis F. Gannon as Defendants.

Amendment to the Constitution of the United States, "which prohibits government over entanglement with religion." (Compl. ¶ 11.) Plaintiff also alleges violations of: the Equal Access provision of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (a); Article 6, Clause 3 of the United States Constitution, prohibiting religious tests; the First Amendment's prohibition against religious persecution; the Equal Protection Clause of the Fourteenth Amendment; the Due Process Clause of the Fifth Amendment; Deprivation of rights under the color of law in violation of 18 U.S.C. § 242; Conspiracy against rights in violation of 18 U.S.C. § 241; and violation of Equal Protection under 42 U.S.C. § 1985. (Compl. ¶¶ 11-61.)

With respect to specific harm, Plaintiff alleges that her minor niece, over whom she has permanent custody, will be traveling to a predominantly Muslim country on a U.S. passport, "yet may not be allowed to return due to the claimed flexibility and fluidity of the terms of the Order. The Plaintiff is also concerned that her extended family will be prevented from visiting her son and niece." (Compl. ¶ 51.) Plaintiff additionally asserts that she has a trip scheduling to resolve business issues resulting from her divorce. Despite holding United States citizenship, she is reluctant to travel "for fear that she might not be allowed back into her own country due to the ban." Plaintiff's fear is based on the fact that "attorneys were publicly warning even U.S. citizens who are Muslims, to avoid traveling to predominantly Muslim countries for fear of being denied reentry." Plaintiff states that if she "is not allowed to travel with the assurance that her Constitutional right to be allowed reentry into the US is respected, she will suffer a significant financial loss in both money and property because she will not attend the legal proceedings in that country." (Compl. ¶ 51.) Plaintiff states that her son and minor niece, who could be prevented from traveling or receiving extended family in the U.S. as a result of the E.O. "might also lose their inheritance, including property due to an inability to travel for fear of not being

allowed to return to the United States." (Compl. ¶ 52.) Finally, the Plaintiff states that she "and her family ha[ve] also suffered extreme anxiety and uncertainty due to the President's claim to derive the authority to issue the [E.O.] under 8 [U.S.C. §] 1102 which states that the President can designate immigrants and nonimmigrants for deportation and denial of entry." (Compl. ¶ 53.) As a "well known political analyst and commentator who is often critical of U.S. foreign policy and our government" Plaintiff is "concerned that she will be caught up in the [E.O.] and either deported, or if she leaves the U.S. denied reentry under the [E.O.]." (*Id.*)

In terms of relief, Plaintiff asks the Court to enter judgment overturning the E.O. and awarding damages for the psychological stress placed upon Plaintiff and her family as a result. (Compl. 22.)

## II.

Under 28 U.S.C. § 1915(e), the federal *in forma pauperis* statute, Courts must *sua sponte* dismiss an action upon determining that an *in forma pauperis* complaint fails to state a claim on which relief can be granted. Thus, a typical initial screen involves consideration of the merits of the claims asserted. In this case, however, upon review of Plaintiff's Complaint, the Undersigned determines it is unnecessary to consider the merits of the claims she advances because she lacks standing to obtain the relief he requests.

Standing is a threshold jurisdictional question that courts must address prior to and independent of the merits of a party's claim. *Horne v. Flores*, 557 U.S. 433, 445 (2009). "Standing to bring suit must be determined at the time the complaint is filed." *Smith v. Jefferson County Bd. of School Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005)). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560–61 (1992) (citations omitted). Standing jurisprudence involves both constitutional and prudential considerations. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

Article III standing enforces the Constitution's case-or-controversy requirement. Article III standing requires a plaintiff to have suffered an "injury in fact" that is (1) "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "fairly traceable to the challenged action of the defendant"; and (3) likely to "be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 560–61 (alterations, internal quotation marks, and citations omitted). The standing inquiry is particularly rigorous when reaching the merits of the dispute "would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997)).

## III.

The Undersigned recommends dismissal for lack of standing because Plaintiff fails to allege an injury in fact. The injury prong of the standing doctrine requires that the harm be actual or imminent. In other words, the harm must have already occurred or it must be likely to occur "imminently." *Defenders of Wildlife*, 504 U.S. at 560. "Imminent" in this context is defined as "certainly impending," in contradistinction to "allegations of possible future injury." *Clapper*, 133 S. Ct. at 1147. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). Moreover, the injury must be concrete and particularized to the Plaintiff. *Defenders of Wildlife*, 504 U.S. at 572; *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

5

Applying the law to the facts at issue in this case, Plaintiff has failed to allege harm that is particularized or imminent. As a threshold matter, Plaintiff concedes that the country of her family's origin is not affected by the E.O. Thus, any restriction on travel applying to Plaintiff or her family members is purely conjectural. Moreover, Plaintiff is a United States citizen, to whom the E.O. explicitly does not apply. As a result, the Complaint fails to establish that she as a "personal stake" in the alleged dispute, and that the "alleged injury suffered is particularized as to [her.]" *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Plaintiff's own statements in the Complaint belie any assertion that she is personally affected by the E.O., as she states that she is "not attempting to speak for those adversely affected by the ban," but rather as a U.S. citizen she has a constitutional interest in the E.O. (Compl. ¶ 51.) The Supreme Court has, however, specifically declined to find standing in situations in which regulations are challenged by plaintiffs who hold generalized grievances rather than being personally affected by the aggrieved law. *See e.g. Defenders of Wildlife*, 504 U.S. at 572 (no concrete or particular injury to plaintiffs with generalized grievance against statute); *Summers*, 555 U.S. at 497 (no standing for environmental groups to challenge U.S. Forest Service regulation in absence of dispute over application of regulations). Here, as a U.S. citizen, Plaintiff is not the "object of the challenged action," and therefore, lacks the personal affectations necessary for standing. *Wright v. O'Day*, 706 F.3d 769, 772 (6th Cir. 2013).

For the forgoing reasons, it is **RECOMMENDED** that this action be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

## PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [th defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

      **IT IS SO ORDERED.**

Date:  February 27, 2017                     ____/s/ *Elizabeth A. Preston Deavers*____
                                         ELIZABETH A. PRESTON DEAVERS
                                         UNITED STATES MAGISTRATE JUDGE